The STATE of Ohio, Appellant,

v.

FERGUSON, Appellee.

[Cite as *State v. Ferguson* (1998), 126 Ohio App.3d 55.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APA05–674.

Decided April 14, 1998.

**56**

*Betty D. Montgomery,* Attorney General, *Simon B. Karas, Sharon A. McClellan* and *Michael L. Collyer,* Assistant Attorneys General, for appellant.

*Rooney & Shroyer* and *Kevin G. Rooney,* for appellee, Thomas E. Ferguson.

*Whiteside & Whiteside* and *Alba L. Whiteside; McTigue & Brooks* and *Donald J. McTigue,* for appellee, Thomas E. Ferguson, and Friends of Ferguson (Kevin G. Rooney, Treasurer), Kevin G. Rooney, and Donald McTigue.

CLOSE, Judge.

This is an appeal from a judgment of the Franklin County Court of Common Pleas, directing payment of attorney fees from the campaign fund of Thomas E. Ferguson, defendant-appellee.

In October 1993, the Ohio Attorney General appointed a special prosecutor to investigate whether Ferguson had solicited campaign contributions from employees in the State Auditor's Office. Based on the investigations, the state of Ohio, plaintiff-appellant, filed *State v. Ferguson,* case No. 95CR–2269, and indicted Ferguson on eighty counts. However, this indictment was dismissed at the request of the special prosecutor because the indictment failed to state a prosecutable violation. Then, the state filed *State v. Ferguson,* case No. 95CR–3401, in June 1995, and indicted Ferguson on twenty-five counts: nine counts of theft in violation of R.C. 2921.41, thirteen counts of solicitation in violation of R.C. 124.57 and 124.62, and three counts of prohibited activities in violation of R.C. 3517.13.

On March 4, 1996, the state agreed to dismiss sixteen counts of the indictment if Ferguson agreed to plead no contest to nine counts of illegal campaign solicitation in violation of R.C. 124.57 and 124.62. The plea agreement explained Ferguson's punishment for each of the nine counts to which he would plead guilty. One of the punishments was that Ferguson had to relinquish control of his campaign funds to a new treasurer who would cooperate with the Ohio Attorney General in order to distribute the funds to charities and other entities.

Ferguson accepted the plea agreement, and Ferguson, his attorney, the state, and the trial court signed it. The trial court found Ferguson guilty on nine counts of illegal campaign solicitations and, in compliance with the plea agreement, sentenced Ferguson to six months of incarceration on each count, with two counts to be served consecutively and the rest of the counts to be served concurrently with the first two counts. The trial court suspended the confinement part of the sentence for one year of probation. Ferguson had to pay a fine and costs, complete community service, and relinquish control of his campaign fund to the treasurer as conditions of probation.

Kevin Rooney, Ferguson's criminal defense attorney, became the new campaign fund treasurer. Rooney and the Attorney General's Office were not able to agree on the distribution of the campaign funds. The state filed a motion asking the trial court to enforce the terms of Ferguson's probation or, in the alternative, to revoke Ferguson's probation. The trial court held a status conference on June 12, 1996, directing Rooney to liquidate the campaign fund assets and to provide an accounting to the Attorney General's Office and ordering the parties to submit a list of the charities that were to receive money. The trial court also established a date for a hearing at which the charities would be selected and the contribution amounts would be determined. In addition, the trial court would determine whether Ferguson's attorney fees or other costs could be paid from the campaign funds.

The hearing was continued, but the state requested a status conference. At the conference, the state argued that the plea agreement prevented Ferguson from paying his attorney fees out of his campaign fund and that, on July 30, 1996, the Ohio Elections Commission ("OEC") had agreed with the state in Advisory Opinion 96ELC–08 that, to pay legal fees for criminal defense, would violate R.C. 3517.13(O)(2). On February 28, 1997, the trial court heard arguments regarding the plea agreement and, on May 8, 1997, the trial court issued a written decision, finding that the plea agreement did not preclude attorney fees or other costs from being disbursed from the campaign fund. The trial court allowed the partial payment of Ferguson's attorney fees.

The state filed a timely notice of appeal and secured a stay of the trial court's order pending the outcome of the appeal. We granted the state leave to appeal the issue of whether the payment of Ferguson's attorney fees with campaign funds violates R.C. 3517.13(O); specifically, whether the payment of attorney fees with campaign funds for the defense against criminal charges is a violation. The state then filed its appellate brief. Ferguson moved to strike portions of the state's brief because it discussed matters outside the scope of the granted leave to appeal issue. We agreed and limited our appellate review to the issue on which we granted leave. As a result, we only need to determine whether the trial

court sanctioned a result prohibited by R.C. 3517.13(O) by ordering the payment of Ferguson's attorney fees for his criminal defense with campaign funds.

The state brings a single assignment of error:

"The trial court's order directing payment of attorney and treasurer fees out of appellee Ferguson's campaign funds altered the parties' plea agreement as accepted in the sentencing entry and in the process sanctioned a result prohibited by Ohio Revised Code § 3517.13(O)."

R.C. 3517.13(O) states:

"No beneficiary of a campaign fund shall convert or accept for personal or business use, and no person shall knowingly give to a beneficiary of a campaign fund, for the beneficiary's personal or business use, anything of value from the beneficiary's campaign fund, including, without limitation, payments to a beneficiary for services the beneficiary personally performs, except as reimbursement for any of the following:

"(1) Legitimate and verifiable prior campaign expenses incurred by the beneficiary;

"(2) Legitimate and verifiable, ordinary, and necessary prior expenses incurred by the beneficiary in connection with duties as the holder of a public office, including, without limitation, expenses incurred through participation in nonpartisan or bipartisan events if the participation of the holder of a public office would normally be expected[.]"

Both the state and Ferguson have presented OEC advisory opinions that have addressed R.C. 3517.13(O) for us to consider. We note that these advisory opinions are neither binding authority nor completely on point.

In Advisory Opinion 87–9, the OEC decided that a public officeholder may not use campaign funds to pay for legal representation to defend himself against criminal charges of tampering with records, theft in office, falsification and bribery. The OEC stated that defending against crimes was not a legitimate expense related to the duties of a public office under R.C. 3517.13(O)(2).

However, in No. 96S–072, which is an OEC opinion that addressed another Ferguson matter, the OEC upheld the essential holding in Advisory Opinion 87–9, but noted that limited circumstances may arise in which the OEC would allow campaign funds to be used to pay for expenses in defending allegations of criminal conduct. See Advisory Opinion 96ELC–08, discussing No. 96S–072. The OEC stated that determinations about whether to make an exception would be made on a case-by-case basis. In the specific circumstances of case No. 96S–072, the OEC decided that Ferguson's campaign funds could be used to pay for

expenses incurred in defending allegations of criminal conduct because that criminal case was summarily dismissed before it went to trial.

The OEC Advisory Opinion 96ELC–08, which is the advisory opinion requested by the state during this case and presented to the trial court, followed Advisory Opinion 87–9 and determined that an expenditure for legal fees to defend against criminal charges is an inappropriate use of campaign funds on behalf of the officeholder under R.C. 3517.13(O)(2). The OEC stated that "R.C. § 3517.13(O)(2) requires that an expenditure be related to the duties of the public office. Therefore, a proper campaign expense must be related, according to recognized principles or accepted standards, to a duty of the public office." The OEC concluded that the officeholder's duties do not include defending himself against charges of criminal conduct and, therefore, criminal defense expenses are not legitimate expenses and cannot be paid from campaign funds.

After reviewing these OEC advisory opinions and several others, we note that not all payment of attorney fees with campaign funds is forbidden. The OEC allows the payment of attorney fees with campaign funds for representation against charges brought before the OEC itself. Advisory Opinion 87–15; see, also, Advisory Opinion 90–4. Additionally, the payment of attorney fees with campaign funds for representation in declaratory actions is allowable because these are civil actions. The OEC also has specifically decided that Ferguson's attorney fees could be awarded with campaign funds for representation in a criminal case because the charges were dropped by the prosecutor before going to trial. See Advisory Opinion 96ELC–08, discussing No. 96S–072. Based on that OEC opinion, we conclude that the payment of attorney fees with campaign funds for case No. 95CR–2269—the indictment that was dismissed at the request of the special prosecutor because it failed to state a prosecutable violation—is allowable too. Therefore, before we specifically determine whether the trial court sanctioned a result prohibited by R.C. 3517.13(O) by ordering the payment of Ferguson's attorney fees for his criminal defense with campaign funds, we must first decide whether any of the award of attorney fees by the trial court was an award of fees charged for criminal defense not related to case No. 95CR–2269.

The trial court in this case decided that some campaign funds could be applied to the payment of Ferguson's attorney fees:

"This court is of the opinion that counsel for Mr. Ferguson are entitled to some compensation from these funds, but must seek the bulk of their compensation from Mr. Ferguson himself. The court therefore finds that the firm of Messerman and Messerman receive $5,000.00 of their outstanding request of $34,000.00.

"Mr. McTigue is to receive his balance of $10,930.00.

"Mr. Rooney is to receive $13,000.00 in fees for his activities as Treasurer and counsel for the fund and that he further is to receive $5,000.00 for his portion of the defense."

Based on the record in this case, we determine that the trial court's award of fees to Donald McTigue was legitimate. The record reveals that none of the attorney fees charged by McTigue were for criminal defense but, rather, were for expenses that already have been determined to be allowable. However, we cannot determine from the record what portion of the attorney fees, if any, was awarded by the trial court to Rooney and to the firm of Messerman and Messerman for allowable expenses and what portion, if any, was awarded for the defense of criminal charges not related to case No. 95CR–2269.

Accordingly, the state's assignment of error is overruled in regard to McTigue and sustained otherwise. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to the trial court with instructions to determine the amount of attorney fees, if any, that was awarded from Ferguson's campaign fund for criminal defense not related to case No. 95CR–2269. The trial court may reopen the evidence if it deems it appropriate.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded with instructions.*

LAZARUS, J., concurs.

BOWMAN, J., dissents.

BOWMAN, Judge, dissenting.

Being unable to agree with the majority, I respectfully dissent. Appellee, Thomas Ferguson ("Ferguson"), was indicted on twenty-five criminal charges and eventually entered a plea of no contest and was found guilty of nine unclassified misdemeanors. The misdemeanors, R.C. 124.57 and 124.62, prohibited soliciting political contributions from employees in the classified civil service. The remaining sixteen charges were dismissed. Ferguson and his attorney signed a written statement entering his plea of no contest. The no contest plea provided in part:

" * * * I understand that I am pleading 'No Contest' to a Felony/felonies/misdemeanor(s) which is/are punishable by a fine from $50 to $500.00 and/or incarceration up to 6 months or both. And a relinquishment of his Campaign Fund. The Treas. of the fund will cooperate with the Atty. Genl. for distribution of the Fund to charities & other entities in accordance with 3517.08(G) ORC. Mr.

Ferguson through his Treas. shall have input as to the charity & entity to recom. the fund."

In accepting Ferguson's no contest plea, the trial court informed him:

" * * * BY AGREEMENT, IN THE PLEA NEGOTIATIONS THAT HAVE BEEN ENTERED INTO THIS MORNING BETWEEN YOUR COUNSEL AND THE REPRESENTATIVE OF THE ATTORNEY GENERAL AND COUNTY PROSECUTOR, THE SPECIAL PROSECUTOR, MR. MCLAUGHLIN, YOU ARE ALSO AGREEING, SIR, AS PART OF THIS PLEA NEGOTIATION FOR A RELINQUISHMENT OF YOUR CAMPAIGN FUND, THAT THE TREASURER OF THAT FUND WILL COOPERATE WITH THE ATTORNEY GENERAL OF THE STATE OF OHIO FOR THE DISTRIBUTION OF REMAINDERS OF THAT FUND TO CHARITABLE INSTITUTIONS AND OTHER ENTITIES IN ACCORDANCE WITH CHAPTER 3715.08(G) [*sic*] OF THE OHIO REVISED CODE * * *."

The court's sentencing entry provides in part:

" * * * In accordance with the plea agreement, defendant shall relinquish control of the Friends of Ferguson Funds * * *."

A dispute arose between appellant, the state of Ohio, and Ferguson's attorneys over relinquishment of the funds to the Attorney General's Office, and whether fees of the treasurer and Ferguson's attorneys could be withheld from the amounts to be disbursed to charity pursuant to R.C. 3517.08(G). Numerous motions were filed, and the hearing was scheduled and continued several times. Eventually, a hearing was held February 28, 1997, at which Kevin Rooney, the treasurer, testified as to his understanding of the plea agreement and the services he provided to the campaign fund. The trial court denied appellant's request to call Patrick McLaughlin, who was appointed as special prosecutor in this matter, to testify as to his understanding of the plea agreement. In its decision, as to disbursement of the campaign fund and payment of attorney fees, the trial court stated:

"The court has been advised that the balance in the campaign fund as reported on January 30, 1997, was $109,357.40. * * * The report further indicated outstanding debts of the campaign. To attorneys, Jerry Messerman, in the amount of $34,173.93; to Kevin Rooney as Treasurer, in the amount of $13,202.00; to Mr. McTigue in the amount of $10,930.07; to Kevin Rooney as counsel in the amount of $30,000.00 and to Colley Investigations, $763.70."

This court granted leave to appeal only on the issue of whether payment of attorney fees with campaign funds violated R.C. 3517.13(O). Thus, as the majority notes, there is no issue before the court as to the propriety of payments to Rooney in his capacity as treasurer.

R.C. 3517.13(O) provides in part:

"(O) No beneficiary of a campaign fund shall convert or accept for personal or business use, and no person shall knowingly give to a beneficiary of a campaign fund, for the beneficiary's personal or business use, anything of value from the beneficiary's campaign fund, * * * except as reimbursement for any of the following:

"(1) Legitimate and verifiable prior campaign expenses incurred by the beneficiary;

"(2) Legitimate and verifiable, ordinary, and necessary prior expenses incurred by the beneficiary in connection with duties as the holder of a public office, including, without limitation, expenses incurred through participation in nonpartisan or bipartisan events if the participation of the holder of a public office would normally be expected[.]"

While recognizing, as does the majority, that the opinions of the Ohio Elections Commission ("OEC") are advisory in nature and not binding on the court, nonetheless, the definition of "legitimate expense" formulated by the commission in a number of cases appears appropriate. In Advisory Opinion 87–9, the commission stated:

" 'Legitimate' expenses are those that are truly or validly related to a purpose set forth in R.C. 3517.13(O). To be true or valid, an expense must conform to recognized principles or accepted standards. Thus, in the case of an expense under R.C. 3517.13(O)(2), the expense must be related, according to accepted standards, to a duty of the public office. See Advisory Opinion 87–4. Legal fees incurred by an officeholder in defending against an investigation or prosecution of criminal charges of tampering with records, theft in office, falsification and bribery are not legitimate expenses related to the duties of a public office.

"A public officeholder must perform the duties of his or her office, as prescribed by law, to the best of his or her ability. An officeholder's duties do not include defending himself or herself against charges of criminal conduct. Therefore, any expenses incurred in such defense are not legitimate expenses related to the duties of the public office and may not be paid for from the officeholder's campaign funds."

While the definition provided by OEC relates to R.C. 3517.13(O)(2) and expenditures by an officeholder in the performance of his duty, the same definition is nonetheless equally applicable to R.C. 3517.13(O)(1) pertaining to expenses of a campaign. It is clear that R.C. 3517.13(O) permits the use of campaign funds for legitimate purposes in waging a campaign and, equally clear, it permits the use of any remaining funds for the legitimate, ordinary and necessary expenses associated with the duties of the officeholder and the public

office held. Likewise, R.C. 3517.13(O) is clear in its statement that none of the funds may be used to benefit the officeholder personally.

It is beyond dispute that all of the attorney fees were expended only for the personal benefit of Ferguson in his efforts to defend against a myriad of felony and misdemeanor charges. There is simply no way in which it can be held that an officeholder who illegally solicited campaign contributions from classified public employees was performing a duty of the public office or that he was performing such duties according to accepted standards. The purpose of a campaign fund is to permit an individual to attain public office and to meet the legitimate expenses related to the lawful performance of that office. It is not the purpose of campaign funds to offset costs of criminal activity or to personally benefit the candidate or officeholder.

In its decision, the majority has concluded that payment of Ferguson's attorney fees from campaign funds is appropriate in two situations, that is, if the expenses pertain to an indictment that was filed and dismissed and for "representation in declaratory actions * * * because these are civil actions."

Apparently, in 1995, Ferguson was indicted in case No. 95CR–2269, which was dismissed in May 1995. That indictment and the reasons for its dismissal are not part of the record, but appellant does not contend that this did not occur.[1] The majority finds payment for attorney fees associated with this dismissal to be proper based on a decision by the OEC in No. 96S–076,[2] which involved a referral by the Secretary of State concerning "[c]onversion to personal use of campaign funds by a candidate in violation of R.C. 3517.13(O) and Ohio Elections Commission Advisory Opinion No. 87–9." The respondents in that matter were Thomas Ferguson and Friends of Ferguson. In three identical decisions rendered August 28, 1996, September 16, 1996, and September 27, 1996, the OEC, in its decisions, simply stated:

"Please be advised that on June 28, 1996, after careful consideration of the evidence, the Ohio Election Commission adopted the following finding(s) in the above referenced matter:

---

1. In his brief, appellee stated:

"* * * In April, 1995 the case of State v. Ferguson, case number 95CR–2269, an 80 count indictment was filed. The indictment alleged violations of not only R.C. [Chapter] 124, but also violations of R.C. 2921.41, 2913,31, 2921.13, and 3517.13. This indictment was dismissed in May, 1995 at the request of the special counsel after it became apparent that the indictment failed to even state a violation of R.C. [Chapter] 124, the only stated mission of the original appointment.

"In June, 1995, State v. Ferguson, case number 95CR–3401 was filed. Again this was an 80 count indictment similar to the former. * * * "

2. This case is incorrectly referred to in the majority opinion and in Advisory Opinion 96ELC–08 as 96S–072.

"The Commission found no violation of R.C. § 3517.13(O)(2)."

While the decision in No. 96S–076 provides no reasons for the action taken, in a hearing held in the matter on June 28, 1996, one of the commission members stated:

" * * * MR. CHAIRMAN, IF I MAY. I THINK THIS CASE CAN BE DISTINGUISHED FROM THE BRIGHT–LINE FOLDING [sic] IN 87–9 SIMPLY BECAUSE THIS IS THE CASE IN WHICH THERE WAS— THERE WAS AN INDICTMENT, AND, THEN, IT WAS SUBSEQUENTLY PRETTY MUCH SUMMARILY DISMISSED BY THE PROSECUTOR.

"I THINK, THOUGH, I DON'T ALWAYS NECESSARILY BELIEVE IN OUTCOME BASED DECISIONS, I THINK THIS IS SUCH A CLEAR CUT CASE OF THE OUTCOME BEING—CALLED INTO QUESTION OF THE ORIGINAL INDICTMENT AND THAT'S WHY I'M MAKING THE MOTION, BUT I THINK—I DON'T WANT TO OVERRULE THE 87–9, BUT I THINK WE CAN CERTAINLY DISTINGUISH THE CASE."

Following this statement, the chairman of the commission stated:

" * * * IT'S BEEN MOVED AND SECONDED THAT THE PAYMENTS MADE TO MR. MESSERMAN WERE WITHIN THE DISCRETION OF MR. FERGUSON AND PERMITTED USE OF CAMPAIGN FUNDS AND THAT WE ARE NOT OVERRULING 87–9, BECAUSE SPECIAL CIRCUM-STANCES AS PRESENTED IN THIS CASE ARE WE PERMITTING THE USE OF CAMPAIGN FUNDS FOR THE PAYMENT OF LEGAL EX-PENSES. * * * "

Thus, from the vague facts in No. 96S–076, it appears that Ferguson was indicted, the charges were dismissed by the prosecutor, and no further action occurred. In the case before us, Ferguson was indicted and that indictment was dismissed; however, apparently, essentially the same charges were refiled with citation to the correct code sections (see appellee's Statement of the Case and Facts), and Ferguson entered a plea of no contest and was found guilty of nine of these counts.

Therefore, I am unable to agree with the majority that OEC specifically held that, under any circumstances, Ferguson's attorney fees could be paid from campaign expenses for an earlier dismissed indictment. In this case, although one indictment was dismissed, Ferguson was reindicted, apparently based on the same activity, and subsequently convicted.

Even assuming, *arguendo*, that payment was proper for attorney fees relating to the first indictment, Messerman and Messerman, and Donald McTigue never presented any evidence to the court to support their claim for fees related to the indictment and dismissal in case No. 95CR–2269. In fact, there was no evidence

before the trial court that Messerman and Messerman, or McTigue represented Ferguson in case No. 95CR–2269. Ferguson states in his brief, page three, that McTigue was not retained until after the dismissal. Attached to Ferguson's brief are various billings sent by McTigue which total $10,930.70, the amount granted by the trial court. While attaching exhibits to a brief does not make those exhibits evidence in the record, appellant appears to concede that these bills are correct and represent the amount Ferguson owes McTigue for his legal services. These bills, however, are only for charges for representing Ferguson from July 8, 1996 through December 17, 1996, which was long after the indictment was dismissed. The attorneys in this matter were given an opportunity to provide evidence of their fees and services rendered on behalf of Ferguson relating to the dismissed indictment, but failed to do so. There appears to be no reason to provide them with an opportunity to do so again.

The majority also finds that payment of fees for representation in declaratory actions to be proper because "these are civil actions." The majority, however, offers no reason for distinguishing between attorney expenses incurred for civil and criminal actions within the context of R.C. 3517.13(O). Regardless of whether attorney fees were incurred in a civil or criminal proceeding, the fees must relate to a purpose set forth in R.C. 3517.13(O), that is, the attorney fees must relate to the performance of a duty of public office in accordance with accepted standards. Therefore, unless an expense meets this criterion, it is not a legitimate expense, regardless if it results from a civil or criminal proceeding.

Although not referred to by the majority in its opinion, it would appear that Ferguson seeks to be paid attorney fees arising out of *Friends of Ferguson v. Ohio Elections Comm.* (1997), 117 Ohio App.3d 332, 690 N.E.2d 601. Ferguson and Friends of Ferguson filed a complaint in common pleas court for declaratory judgment and injunctive relief, and the issues concerned attempts to use campaign funds to pay legal fees incurred by Ferguson, and expected to be incurred by Ferguson, in defending criminal actions. This court affirmed the decision by the trial court, sustaining Ferguson's motion for judgment on the pleadings and stated:

" * * * [A]ppellants could have sought an advisory opinion from appellee regarding the propriety under R.C. 3517.13(O) of using campaign funds to pay for legal services defending accusations that Ferguson had violated statutes regarding the solicitation of campaign contributions. Accordingly, an 'equally serviceable remedy' was available.

"Appellants' constitutional claims are so contingent that they fail to constitute a real controversy which is justiciable. *Bilyeu* [*v. Motorists Mut. Ins. Co.* (1973), 36 Ohio St.2d 35, 65 O.O.2d 179, 303 N.E.2d 871], *supra.*

"The trial court did not abuse its discretion when it dismissed appellants' declaratory judgment action. Appellants' assignment of error is overruled."

Thus, the declaratory judgment action and the subsequent appeal related to the same issues and controversy here, that is, whether Ferguson may use campaign funds to pay attorney fees incurred by him personally for criminal acts committed while he was a public officeholder. Again, the attorney fees expended in the declaratory judgment benefitted only Ferguson personally and did not relate to the lawful performance of his duties as auditor or arise from a legitimate campaign expense. Therefore, payment of such fees would be an improper use of campaign funds pursuant to R.C. 3517.13(O).

Although I disagree with the majority that the campaign funds may be used to pay expenses associated with dismissal of the first indictment against Ferguson or the declaratory judgment action, Ferguson was well represented by his attorneys. One indictment was completely dismissed and, of the charges in the second indictment, sixteen out of twenty-five of those charges were dismissed. Through his attorneys' representations, Ferguson was found guilty of only nine unclassified misdemeanors, received a suspended sentence, and was released from probation early. There is no doubt that the attorneys in this matter are entitled to be well compensated. I disagree, however, that the source of such compensation should be campaign funds.

Therefore, I would sustain appellant's assignment of error and reverse the judgment of the trial court.