## In re CIVIL COMMITMENT PROCEEDINGS UNDER R.C. CHAPTER 5122.

### In re John Doe et al.

[Cite as *In re Civ. Commitment Proceedings under R.C. Chapter 5122* (2001), 141 Ohio App.3d 168.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

Nos. 98 C.A. 238 and 98 C.A. 157.

Decided Jan. 24, 2001.

*Buckingham, Doolittle & Burroughs, Joseph J. Feltes* and *Jacquelyn A. Marks,* for appellants.

*Linette S. Baringer,* Chief Assistant, Civil Division, Mahoning County Prosecutor's Office, for appellee.

---

Cox, Presiding Judge.

This matter presents a timely appeal from a judgment rendered by the Mahoning County Common Pleas Court, Probate Division, denying the joint

motion filed by appellants, HM Health Services, d.b.a. St. Elizabeth Health Center, et al., and issuing a judgment, upon reconsideration, finding St. Elizabeth Health Center to be in contempt of court.

Since the closing of Woodside Hospital, all persons in Mahoning County alleged to be mentally ill and involuntarily committed were admitted to either St. Elizabeth Health Center ("St. Elizabeth") or Northside Medical Center ("Northside"). When a person is alleged to be mentally ill, before an involuntary commitment may be obtained, the person must be evaluated by a physician or psychiatrist. The task of completing such evaluations was placed upon the chief clinical officers ("CCO") of the respective hospitals, who were John Sorboro, M.D. ("Dr. Sorboro") for St. Elizabeth, and Ralph Walton, M.D. ("Dr. Walton") for Northside.

On July 9, 1998, Dr. Sorboro refused to testify on behalf of St. Elizabeth at a commitment hearing that was held regarding a patient located at that facility. The attorney for St. Elizabeth arranged to have another psychiatrist testify; however, Dr. Sorboro refused to allow the psychiatrist to offer such testimony. On July 17, 1998, another commitment hearing was conducted concerning a patient located at Northside and Dr. Walton appeared before the court to testify on behalf of Northside. Upon thereafter calling cases involving St. Elizabeth, Dr. Sorboro once again refused to testify. As such, the trial court found St. Elizabeth in contempt of court. In so finding, the trial court stated that St. Elizabeth's actions, and those of Dr. Sorboro, interfered with the administration of justice.

St. Elizabeth appealed the order of contempt, but then filed a motion for stay and remand. This court granted the motion and remanded the case for the limited purpose of ruling on a pending motion to vacate judgment. St. Elizabeth filed a motion for relief from judgment in an effort to obtain relief from the trial court's order of contempt. On August 21, 1998, HM Health Services, d.b.a. St. Elizabeth and Western Reserve Care System ("WRCS"), filed a joint motion wherein the parties presented the trial court with a new approach to obtaining psychiatrists to testify at involuntary commitment hearings. Under the proposed plan, the trial court would consult the Mahoning County Mental Health Board ("MCMHB"), which would designate a qualified psychiatrist from an "on call" pool. The trial court could then use this designated psychiatrist to evaluate the patient and provide any necessary testimony. The plan also stated that each designated psychiatrist would be paid $250.

The trial court conducted a hearing on November 13, 1998. The trial court thereafter denied St. Elizabeth's motion for relief from judgment and also denied the joint motion of St. Elizabeth and WRCS. This appeal followed.

Appellants set forth three assignments of error on appeal.

For purposes of clarity and organization, appellants' second assignment of error will be discussed first and alleges:

"The probate court erroneously construed the Ohio legislature's intent in Chapter 5122 as requiring the treating facility's 'Chief Clinical Officer,' or his designee, to testify in involuntary commitment hearings as part of his duties, in violation of both R.C. 5122.14 and the Ohio Supreme Court's decision in *In re Miller* (1992) 63 Ohio St.3d 99, 585 N.E.2d 396."

St. Elizabeth argues that appellee, the Mahoning County Probate Court, erred in compelling its CCO, Dr. Sorboro, to report to the trial court for every involuntary commitment hearing. St. Elizabeth cites *In re Miller* (1992), 63 Ohio St.3d 99, 109, 585 N.E.2d 396, wherein the Ohio Supreme Court stated that the best procedure for involuntary commitment hearings is to have the individual sought to be committed examined by an independent psychiatrist, and not the treating psychiatrist. The Ohio Supreme Court in *Miller* feared that if the treating psychiatrist were required to testify in such proceedings, a "chilling effect" could potentially be placed on the treatment, as the patient would be less likely to disclose all relevant information. St. Elizabeth also cites R.C. 5122.14, which permits a trial court to appoint its own psychiatrist to examine a patient for purposes of involuntary commitment proceedings.

St. Elizabeth argues that in the case at bar, the proper procedure was for appellee to appoint an independent psychiatrist, instead of requiring Dr. Sorboro to testify. St. Elizabeth contends that this practice is in the best interest of the patient because it prevents any potential "chilling effect" on the treatment of the patient. This "chilling effect" is argued to exist, since the CCO operates in a similar capacity as the treating psychiatrist. St. Elizabeth maintains that the CCO is responsible for the oversight of patients in the hospital unit and performs an important role in the treatment of the patient. St. Elizabeth submits that it is also in appellee's best interest to appoint an independent psychiatrist because, otherwise, the CCO's testimony would consistently be under attack as being biased. Therefore, based upon R.C. 5122.14 and *Miller, supra,* St. Elizabeth concludes that appellee erroneously compelled Dr. Sorboro to attend the involuntary commitment hearings.

We cannot find that appellee erred in requiring Dr. Sorboro to appear and testify at the involuntary commitment hearings. The CCO has certain duties under R.C. 5122.27, which states:

"The chief clinical officer of the hospital or his designee shall assure that all patients hospitalized or committed pursuant to this chapter shall:

"(A) Receive, within twenty days of their admission sufficient professional care to assure that an evaluation of current status, differential diagnosis, probable

prognosis, and description of the current treatment plan is stated on the official chart;

"(B) Have a written treatment plan consistent with the evaluation, diagnosis, prognosis, and goals which shall be provided, upon request of the patient or patient's counsel, to the patient's counsel and to any private physician or licensed clinical psychologist designated by the patient or his counsel or to the legal rights service;

"(C) Receive treatment consistent with the treatment plan. The department of mental health shall set standards for treatment provided to such patients, consistent wherever possible with standards set by the joint commission on accreditation of healthcare organizations."

Furthermore, R.C. 5122.15 sets forth the procedure for full hearings and provides:

"(1) With the consent of the respondent, the following shall be made available to counsel for the respondent:

"* * *

"(b) All relevant documents, information, and evidence in the custody or control of the hospital in which the respondent currently is held, or in which the respondent has been held pursuant to this chapter;

"(c) All relevant documents, information, and evidence in the custody or control of any hospital, facility, or person not included in division (A)(1)(a) or (b) of this section.

"* * *

"(10) * * * an attorney that the board designates shall present the case demonstrating that the respondent is a mentally ill person subject to hospitalization by court order. The attorney shall offer evidence of the diagnosis, prognosis, record of treatment, if any, and less restrictive treatment plans, if any. * * *"

The duties of the CCO under R.C. 5122.27 to assure a diagnosis, prognosis, and treatment plan, corresponds with the information required to be provided under R.C. 5122.15, including the treatment plan, diagnosis, prognosis, treatment, and other relevant information on the subject individual. Furthermore, pursuant to R.C. 5122.12(F), notice of any hearing which the court directs must be provided to the CCO of the facility to which the patient has been committed. Therefore, upon review of R.C. Chapter 5122, it is logical to have the CCO testify at an involuntary commitment hearing.

It is further noted that the Ohio Supreme Court in *Miller, supra,* did not completely ban the treating psychiatrist from testifying in an involuntary commitment hearing. Rather, under *Miller,* the Ohio Supreme Court discussed a

possible "chilling effect" from requiring a treating psychiatrist to testify, and stated that the better approach was to have an independent psychiatrist testify. In the present matter, it is unclear from the record whether the duties of the CCO in question were the same as those of the treating psychiatrist. R.C. Chapter 5122 does not expressly state that the CCO must conduct an examination and establish a diagnosis of an individual. Instead, under R.C. 5122.27, the CCO must merely *assure* that the committed patient receives an evaluation, diagnosis, treatment plan and actual treatment in accordance with the treatment plan. Furthermore, under the definition of CCO set forth in R.C. 5122.01, the CCO may delegate the duties imposed upon him by R.C. Chapter 5122 to the attending physician. Since the record does not demonstrate that the CCO in question acted as the treating psychiatrist, and R.C. Chapter 5122 does not expressly require the CCO to treat the patient, there was no "chilling effect" in this case as recognized in *Miller*. Therefore, appellee did not err in requiring the CCO of St. Elizabeth to testify at involuntary commitment hearings.

Appellants' second assignment of error is found to be without merit.

Appellants' first assignment of error alleges:

"The probate court erroneously held that appellant, HM Health Services, d/b/a/ St. Elizabeth Health Center ('St.Elizabeth'), to be in contempt of court for not providing, or arranging for the provision of, independent medical testimony pursuant to R.C. 5122.14."

R.C. 2705.01 provides that a trial court may summarily punish a person for contempt for misbehavior in the presence of the trial court or so close to the trial court as to result in the obstruction of the administration of justice. R.C. 2705.02(A) states that a trial court may also punish a person for being in contempt of court for violating a lawful writ, process, order, rule, judgment or command of the court. A trial court's decision to hold a person in contempt will not be reversed absent an abuse of discretion. *Internatl. Merchandising Corp. v. Mearns* (1989), 63 Ohio App.3d 32, 36, 577 N.E.2d 1128, 1130–1131. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Tracy v. Merrell Dow Pharmaceuticals, Inc.* (1991), 58 Ohio St.3d 147, 569 N.E.2d 875.

St. Elizabeth contends that appellee erred in holding it in contempt of court for Dr. Sorboro's refusal to testify at the involuntary commitment hearings. First, St. Elizabeth contends that Dr. Sorboro was not physically present before the trial court and, thus, could not have committed misbehavior before the court. Second, St. Elizabeth contends that Dr. Sorboro did not attend the hearings based upon a good faith interpretation of R.C. Chapter 5122. In *Williams v. Morris* (1992), 62 Ohio St.3d 463, 467, 584 N.E.2d 671, 674, the Ohio Supreme

Court held that a party could not be held in contempt of court if that party's actions were based upon a misinterpretation of a statute, stating:

"Subsequently, appellants released appellee under their own interpretation of R.C. 2967.15. That interpretation may have been wrong, * * * *but it was not in disregard of the court of appeals' express judgment entry.* Accordingly, there was no basis for the finding of contempt." (Emphasis added.)

St. Elizabeth contends that even if Dr. Sorboro was required to testify at the involuntary commitment hearing, his refusal to testify was based upon a good faith interpretation of R.C. Chapter 5122. Therefore, St. Elizabeth concludes that it could not be held in contempt because of its good faith interpretation of the statute. *Williams.*

█ In the case at bar, the record does not contain a prior judgment entry requiring the CCO of the respective hospitals to testify in involuntary commitment hearings. Appellee purportedly held a prior meeting with several attorneys and various agencies to discuss the duties of the individuals and hospitals under R.C. Chapter 5122. After conducting such meeting, appellee states that it gave an advisory opinion requiring the CCO of the respective hospitals to testify. However, said advisory opinion is not provided in the record. Furthermore, advisory opinions are not binding. *State v. Ferguson* (1998), 126 Ohio App.3d 55, 58, 709 N.E.2d 887, 889–890. Only the November 24, 1998 judgment entry set forth a detailed analysis of R.C. Chapter 5122, and determined that it was logical to require the CCO of the respective hospitals to testify. Had Dr. Sorboro refused to testify after the trial court's November 24, 1998 judgment entry, he would have violated an express judgment entry, thereby subjecting St. Elizabeth to punishment for contempt, even under the holding in *Williams.*

However, Dr. Sorboro's refusal was before the November 24, 1998 judgment entry, and the record does not contain any prior judgment entries expressly stating that the CCO had to appear to testify, nor was there any subpoena requiring Dr. Sorboro's attendance. Absent such judgment entry or subpoena, St. Elizabeth did not disregard a court order.

From further review of the record, we agree that Dr. Sorboro's failure to attend appeared to be based upon a belief that neither he nor anyone else from St. Elizabeth should testify because they were not independent psychiatrists. As discussed under appellants' second assignment of error, the trial court did not err in requiring the CCO of the respective hospitals to testify. However, Dr. Sorboro misinterpreted the statute, and more specifically R.C. 5122.14, prior to the trial court's specific mandate. Such misinterpretation, as well as the fact that St. Elizabeth did not disregard an express judgment entry, did not provide a

basis for finding St. Elizabeth to be in contempt. *Williams.* The trial court abused its discretion in reaching such conclusion.

Appellants' first assignment of error is found to be with merit.

Appellants' third assignment of error alleges:

"The probate court erroneously denied appellants' joint motion proposing an 'on call' panel of licensed physicians and psychiatrists to provide expert testimony in involuntary commitment hearings, with a fixed compensation rate authorized by statute."

■ Appellants contend that appellee erred in denying their joint motion that set forth a detailed plan to provide a panel of psychiatrists to testify at involuntary commitment hearings. Appellants state that under their plan, appellee could consult the MCMHB, and the MCMHB would designate a qualified psychiatrist from an "on call" panel of psychiatrists. The plan also called for paying the designated psychiatrist $250 for testifying, thereby alleviating the need for the psychiatrist to file an application for fees. Appellants contend that appellee erred in failing to adopt the plan, because it provided an easier process for selecting a psychiatrist. Appellants also state that the plan ensured that the psychiatrist would be independent, thereby eliminating any possible "chilling effect." Appellants also contend that appellee erred when it refused to adopt a set fee because R.C. 5122.43 provides for fees, and the plan provided an easier method to attain the fees.

■ Appellee did not err in denying appellants' joint motion. Absent an abuse of discretion, a trial court's discretionary action will not be reversed. As appellee noted, there had never been a complaint until very recently that a CCO was burdened by having to testify. R.C. 5122.43 provides a means by which a testifying psychiatrist can collect fees, but this includes a requirement that the psychiatrist file an application for fees.

Furthermore, based upon appellants' second assignment of error, we have already concluded that it is logical to have the CCO testify. Since appellee correctly determined that the CCO should testify and applications for fees were not filed, appellee did not abuse its discretion in denying appellants' joint motion to have their plan instituted.

Appellants' third assignment of error is found to be without merit.

Given that appellee erred in finding St. Elizabeth punishable for contempt, the decision is reversed and remanded in that regard only. As appellee did not err in requiring the CCO of the respective hospitals to testify, and did not err in refusing to institute appellants' proposed plan, the decisions in that regard are affirmed.

The judgment of the trial court is hereby affirmed in part and reversed in part and remanded for further proceedings in accordance with law and consistent with this opinion.

*Judgment accordingly.*

GENE DONOFRIO and VUKOVICH, JJ., concur.