Allen "Mac" M. WILLIAMS,
Petitioner–Appellant,

v.

Ron TECK and Friends of Ron Teck,
Respondents–Appellees.

No. 03CA2456.

Colorado Court of Appeals,
Division II.

April 7, 2005.

Allen "Mac" M. Williams, Pro Se.

Hale Friesen, LLP, Richard A. Westfall, Denver, Colorado, for Respondents–Appellees.

Opinion by: Judge RUSSEL.

Petitioner, Allen M. Williams, filed a complaint with the Colorado Secretary of State alleging that respondents—state senator Ron Teck and his candidate committee, Friends of Ron Teck—had violated article XXVIII of the Colorado Constitution and the Fair Campaign Practices Act (FCPA), § 1–45–101, et seq., C.R.S.2004. The secretary of state assigned the matter to an administrative law judge (ALJ). After conducting a hearing, the ALJ entered an agency decision in favor of Teck and the committee.

Williams now seeks review of the ALJ's decision. *See* Colo. Const. art. XXVIII, § 9(2)(a) (decision of the ALJ "shall be final and subject to review by the court of appeals"). Upon review of the record, the ALJ's detailed order, and the parties' arguments, we affirm.

## I. ALJ's Evidentiary Ruling

██ During the hearing, Williams sought to introduce a book entitled "A Guide to Drafting State & Local Campaign Finance Laws." Williams asserted that the book would show what Colorado citizens intended when they voted to adopt article XXVIII. The ALJ refused to admit the book into evidence.

Williams now challenges the ALJ's ruling. We find no error.

██ The rules of evidence generally apply to administrative hearings. Section 24–4–105(7), C.R.S.2004. An ALJ's evidentiary ruling will not be disturbed on appeal unless manifestly erroneous. *Dep't of Higher Educ. v. Singh,* 939 P.2d 491, 494 (Colo.App.1997).

The ALJ correctly refused to admit the book into evidence. The book was irrelevant: it related to a legal argument and did not tend to make more or less probable the existence of any material fact. *See* CRE 401.

## II. ALJ's Ruling on the Merits

██ Williams next argues that the ALJ incorrectly decided the merits of his claims. We disagree.

■ On review, an agency decision will be sustained unless arbitrary or capricious, *see* § 24–4–106(7), C.R.S.2004, unsupported by the evidence, or contrary to law. *Coffman v. Colo. Common Cause*, 102 P.3d 999, 1005 (Colo.2004). We defer to the views of administrative agencies that are authorized to administer and enforce particular laws. Although an agency's legal interpretations are not binding, we will find persuasive an administrative interpretation that is a reasonable construction consistent with public policy. *Coffman v. Colo. Common Cause, supra.*

### A. Unexpended Contributions

The Colorado Constitution limits the amount of money that a political party may contribute to a candidate in any election cycle. *See* Colo. Const. art. XXVIII, § 3(3)(d). Unexpended campaign contributions, regardless of source, are counted against this limit in future election cycles. *See* Colo. Const. art. XXVIII, § 3(3)(e) (unexpended campaign contributions "shall be counted and reported as contributions from a political party in any subsequent election").

In April 2003, Teck's committee filed a report of campaign contributions and expenditures for the period that included the end of one election cycle and the start of another. The committee reported that it held $19,233.50 in unexpended campaign contributions at the end of the first election cycle. The report did not explicitly state that, for the next election cycle, these unexpended contributions would be regarded as contributions from a political party.

Based on the April 2003 report, Williams claimed that Teck's committee had failed to satisfy the reporting requirements of article XXVIII, § 3(3)(e) and § 1–45–106(5), C.R.S. 2004. In Williams's view, the committee was not merely required to report the amount of unexpended campaign contributions; it was required to report them "as contributions *from a political party*" (emphasis added).

The ALJ ruled that Williams's interpretation led to an absurd result:

To report money already on hand as a fictional, new contribution from an unidentified political party would artificially inflate the amount of funds reportedly available to a candidate committee and would be confusing to those who read the report. Such an interpretation of the constitution that results in an unreasonable or absurd result should be avoided. *Bickel v. City of Boulder,* [885 P.2d 215, 229 (Colo.1994) ].

To accomplish the purpose of Section 3(3)(e) it is necessary only that a candidate committee report the amount of unexpended campaign funds on hand at the end of an election cycle. Once reported, it is possible to then compute the amount, if any, that a political party can contribute to that committee in the next election cycle. The Committee in this case accurately reported the amount of its unexpended funds at the end of the election cycle on December 5. By operation of law these funds were to be considered as a political party contribution.

We conclude that the ALJ's ruling was reasonable and reflects a proper understanding of the purpose underlying the constitutional reporting requirement. Accordingly, we uphold the ALJ's determination that the committee did not violate § 3(3)(e) or § 1–45–106(5).

### B. New Contributions

■ Williams contends that the ALJ misapprehended his claim regarding new contributions. We will resolve this contention by reviewing both the ALJ's ruling and the claim that Williams now asserts.

The ALJ thought that Williams had made this claim: in December 2002, Teck's committee accepted $660.19 in new contributions; in doing so, the committee exceeded the $18,000 limit imposed by Colo. Const. art. XXVIII, §§ 3(3)(d) and 4(1)(c). The ALJ ruled that Teck's committee could accept contributions in excess of $18,000 as long as the contributions were not made by a political party. This ruling comports with the plain language of the governing provisions and was correct. *See* Colo. Const. art. XXVIII, § 3(3)(d)-(e); § 1–45–106(5).

Williams now contends that Teck's committee should not have reported the $660.16 as a "contribution." Because Teck is subject to

term limits, Williams argues, new funds received by Teck's committee cannot be used "for the purpose of promoting the candidate's nomination, retention, recall, or election" and therefore are not "contributions" within the meaning of Colo. Const. art. XXVIII, § 2(5)(a)(IV). We reject this claim.

As discussed in part II.C.1 of this opinion, campaign contributions may be used for purposes other than campaigning. Accordingly, article XXVIII defines "contributions" broadly:

> (I) The payment, loan, pledge, gift, or advance of money, or guarantee of a loan, made to any candidate committee, issue committee, political committee, small donor committee, or political party;
>
> (II) Any payment made to a third party for the benefit of any candidate committee, issue committee, political committee, small donor committee, or political party;
>
> (III) The fair market value of any gift or loan of property made to any candidate committee, issue committee, political committee, small donor committee, or political party;
>
> (IV) Anything of value given, directly or indirectly, to a candidate for the purpose of promoting the candidate's nomination, retention, recall, or election.

Colo. Const. art. XXVIII, § 2(5)(a).

Under this definition, Teck's committee could legitimately report, as a "contribution," the funds that it received in December 2002. Even if Williams were correct about the limited meaning of "contribution," we would find no violation: neither article XXVIII, nor the FCPA, nor the applicable rules forbid the over-reporting of information relevant to campaign finance.

## C. Expenditures

In April 2003, Teck's committee reported the following disbursements from unexpended campaign contributions: (1) the committee reimbursed Teck for expenses that he incurred while traveling to attend the Council of State Governments Western Conference and the Western Interstate Commission on Higher Education; (2) the committee paid Teck's legislative interns for their services;

and (3) the committee paid lawyers for defending Teck and the committee against a complaint, also filed by Williams, alleging violations of the FCPA.

On this information, Williams alleged that the committee had spent unexpended campaign funds improperly and had improperly reported the disbursements as "expenditures." The ALJ rejected Williams's claims. Williams now challenges certain parts of the ALJ's ruling as follows.

### 1. Legal Fees

■ Williams first contends that the committee could not use unexpended contributions to pay Teck's legal fees. We disagree.

Contributions to a candidate committee may not be used for "personal purposes not reasonably related to supporting the election of the candidate." Section 1–45–106(1)(a)(II), C.R.S.2004. Nevertheless, candidate committees may use unexpended campaign contributions to pay "expenses that are directly related to such person's official duties as an elected official." Section 1–45–106(1)(b)(V), C.R.S.2004.

The ALJ determined that the legal fees were not used for personal purposes, but were related to Teck's public office:

> [T]he activities involved in complying with Article 28 and the FCPA are particularly public activities brought about by the legal requirement that candidates for public office act in accordance with these laws. The filing of a complaint against a candidate or committee is the primary mechanism to enforce the campaign finance and disclosure laws. See Colo. Const. art. 28, sec. 9(2)(a). A candidate and candidate committee that are charged with violating these laws may not be able to establish their compliance with legal requirements without participating in the hearing of the complaint.

We conclude that the ALJ's ruling was correct. Although legal fees are not specifically mentioned as permissible expenses in § 1–45–106(1)(b)(V), the list is not exhaustive. Rather, the words "including, but not limited to," indicate that the statute merely illustrates the kind of expenses that may be

regarded as "directly related" to an elected official's duties. *See* § 1–45–106(1)(b)(V).

Here, the legal fees properly may be characterized as directly related to Teck's official duties. Teck's duties include filing periodic reports with the secretary of state, and the fees were reasonably necessary to demonstrate that Teck and his committee had properly performed this duty. We find it significant that the fees were incurred for representation at the administrative level. *See State v. Ferguson,* 126 Ohio App.3d 55, 58, 709 N.E.2d 887, 889 (1998) (under Ohio Rev.Code § 3517.13(O), a statute that allows campaign funds to be used for "[l]egitimate and verifiable, ordinary, and necessary prior expenses incurred by the beneficiary in connection with duties as the holder of a public office," campaign funds may be used to pay for legal representation in an action before the election commission, but not to defend against criminal charges).

### 2. Reporting of Expenditures

■ Williams next argues that the various payments should not have been reported as "expenditures" because they were not "for the purpose of expressly advocating the election or defeat of a candidate or supporting or opposing a ballot issue or ballot question," as required by Colo. Const. art. XXVIII, § 2(8)(a).

The ALJ rejected this argument. In the ALJ's view, the definition of "expenditure" does not limit the kinds of expenses that a committee may report. The ALJ observed that Williams's interpretation would lead to an absurd result: a committee would be precluded from reporting certain disbursements of campaign funds, even when the payments were specifically authorized by statute.

We uphold the ALJ's ruling. The ALJ's interpretation comports with the purpose underlying article XXVIII and the FCPA: to require full disclosure of all campaign spending. We note that the governing rule (1) requires committees to itemize all expenditures of $20 or more, and (2) does not explicitly adopt the limited definition of "expenditure" contained in § 2(8)(a). *See* Rules Concerning Campaign and Political Finance 4.4, 8 Code Colo. Regs. 1505–6.

### D. Status of Committee

■ Williams next challenges two rulings regarding the status of Teck's candidate committee. We again uphold the ALJ's rulings.

Here are the pertinent facts:

- In November 2002, Teck won his bid for reelection. His final term in the state senate began in January 2003. Because Teck is term limited, he cannot run again for his senate seat.

- In September 2003, Teck announced that he would run for Congress. Teck filed documents with the Federal Election Commission. His state candidate committee remained intact and did not amend the registration form that it had filed with the secretary of state.

- In October 2003, Teck withdrew as a candidate for Congress. Neither Teck nor the committee accepted contributions for the federal campaign.

Williams claimed that these facts established two separate violations of the campaign finance rules. First, Williams asserted that the committee should have amended its registration form to reflect that Teck had announced a bid for Congress. In Williams's view, the committee's failure to amend was a violation of Rules Concerning Campaign and Political Finance 3.3 (formerly enumerated Rule 23.2).

■ Second, Williams asserted that, because Teck could not run again for state senate, the committee was required to "terminate" within the meaning of Rules Concerning Campaign and Political Finance 3.4 (formerly enumerated Rule 23.3). In Williams's view, the committee violated Rule 3.4 when it failed to terminate at the close of the 2002 election cycle.

The ALJ properly rejected these claims.

First, as the ALJ noted, Article XXVIII applies only to elections for state or local office. It does not govern federal campaigns. Because the committee related solely to Teck's position as a state official, it was not required to amend its registration form to

reflect that Teck was a candidate for federal office.

Second, as the ALJ noted, Teck's committee could not terminate because it still held funds. Under Rule 3.4, a candidate committee may not terminate until it has achieved a "zero balance"—which means "no cash on hand and no debts or obligations." Teck's committee is not required to expend all its funds until nine years after Teck's term has expired. *See* § 1–45–106(1)(a)(III), C.R.S. 2004.

### III. Arguments Concerning the Secretary of State

Williams contends that the ALJ should have ordered the secretary of state to change "the forms, instructions, rules, procedures, filing and indexing systems" that candidates use to meet the financial reporting requirements of article XXVIII and the FCPA. We decline to address these arguments because they were not raised in the agency action. *See Apache Corp. v. Indus. Comm'n*, 717 P.2d 1000 (Colo.App.1986) (arguments not presented, considered, or ruled upon below may not be raised for the first time on appeal). Contrary to the caption on Williams's notice of appeal and opening brief, the secretary of state has never been a party to this action.

The order is affirmed.

Judge ROTHENBERG and Judge TAUBMAN concur.