### UNITED STATES v. SALOMON.

(District Court, E. D. Louisiana. January 29, 1916.)

No. 15210.

1. ALIENS ⬿68—NATURALIZATION—PROCEDURE—DISCRETION OF COURT.

Act June 29, 1906, c. 3592, § 6, 34 Stat. 598 (Comp. St. 1913, § 4354), provides that final action on petitions for naturalization shall be had only on stated days, to be fixed by rule of court, and that in no case shall final action be had upon a petition until at least 90 days have elapsed after filing and posting the notice of such petition. The amendment of June 25, 1910 (36 Stat. 830, c. 401 [Comp. St. 1913, § 4352]), authorizing the naturalization without a previous declaration of intention of persons exercising the rights or duties of citizens under the impression that they are citizens, because of misinformation, provides that such applicant shall comply in all other respects with the law relative to the issuance of final papers of naturalization. *Held*, that the provisions for posting of notice of the petition and for hearing on stated days after 90 days' posting are directory, at least when applied to persons applying under special acts, and may be disregarded in the sound discretion of the court; and hence it was within the discretion of the court to naturalize, without the posting of the petition, a person known to the judge to be patriotic, honorable, and law-abiding, who had been appointed to a position to which he was ineligible unless a citizen, where the public interest, as well as his own, required his immediate naturalization.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 138–145; Dec. Dig. ⬿68.]

2. ALIENS ⬿71½, New, vol. 7 Key-No. Series—NATURALIZATION—CANCELLATION OF CERTIFICATES—"ILLEGALITY"—"IRREGULARITY."

Conceding that it was error to naturalize an applicant, where notice of his petition had not been posted for 90 days, the error was not ground

for canceling the certificate, under Act June 29, 1906, § 15 (Comp. St. 1913, § 4374), authorizing the cancellation of certificates for fraud or illegality, as it was only an "irregularity," which is a want of adherence to some prescribed rule or mode of proceeding, and not an "illegality," which denotes a radical defect (citing Words and Phrases, Illegality).

3. EQUITY ☞450—BILL OF REVIEW—GROUNDS.

A bill of review will not lie unless the party is aggrieved by the decree, and it makes no difference that he might have insisted on the error at the original hearing or on appeal.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 1095; Dec. Dig. ☞450.]

In Equity. Suit by the United States against Oscar Ernst Moritz Salomon to cancel a certificate of naturalization. Bill dismissed.

Walter Guion, U. S. Atty., of New Orleans, La.

John P. Sullivan, Arthur Landry, and Edward M. Heath, all of New Orleans, La., for defendant.

FOSTER, District Judge. This is a bill to cancel a certificate of naturalization. The facts are set out in the bill and answer, and are not disputed. They are as follows:

On July 21, 1914, the defendant applied for naturalization under the provisions of the act of Congress of June 25, 1910, and was naturalized by order of court the same day. In support of his application he filed his affidavit, setting up the following facts as justifying his belief, that he was a citizen and showing he had exercised the rights and performed the duties of a citizen:

"In April, 1876, I was informed by Dr. Paul Goddard that I was a citizen of the, United States, having, prior to that time, filed my declaration of intention as prescribed by law then in vogue in Philadelphia, Pa., with the court of common pleas of Philadelphia, Pa., corner of Sixth and Chestnut streets, in said city and state. My papers for said naturalization I thought lost, having, in 1876, lost my trunk, which contained all of my papers and my supposed naturalization paper, together with my winter clothing. I have exercised the following rights and duties of a citizen of the United States: I have been voting in New Orleans, La., since 1884 to the present date. I have served as a petit juror in the criminal district court for the parish of Orleans. I have served as a member of the United States Public Health and Marine Hospital Service in 1905; have served as special officer in New Orleans, La., during the 'Charles riot,' to protect negro schools. During three recent epidemics in New Orleans, La., I served as general manager of the Third Ward Sanitary Association."

[1] It is admitted by the government that the petition was filed in good faith, that the applicant was guilty of no fraud and was entitled to be naturalized under the provisions of the act of 1910; but the point is raised that as notice of the petition for naturalization had not been posted for 90 days before the decree was entered, in accordance with section 6 of the act of Congress of June 29, 1906, the order admitting the defendant to citizenship is illegal and void. As supporting its contention, the United States relies particularly on the cases of United States v. Peterson, 182 Fed. 289, 104 C. C. A. 571, and In re Schrape (D. C.) 217 Fed. 143. These cases are undoubtedly in point, but are not of controlling authority, and I do not find them

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

persuasive, as it has been the settled policy of this court to waive the posting of the application in cases coming under the special acts, when its enforcement would work a hardship and there is no doubt of the good faith and eligibility of the applicant.

In the administration of the naturalization laws the courts are vested with large discretion, and this is particularly true of the amendment of, 1910. It is a familiar rule that statutes are to be given a reasonable construction, so as to avoid hardship, injustice, and even great inconvenience. In construing the amendment of 1910, it is inconceivable to my mind that Congress should have intended that a man who believed himself to be a citizen and had been honestly and patriotically acting as a citizen on that assumption, while relieved of the delay incident to filing a declaration of intention, should be held up for 90 days, or perhaps longer, when it might be vitally important to him that there be no hiatus in his status as a citizen, and to no good purpose. In the exercise of what I considered sound discretion, I have immediately naturalized honorably discharged sailors and soldiers of the United States who were seeking re-enlistment, a member of the bar who was a candidate for public office, a director of a national bank, and many others similarly situated. The defendant in this case is well known to me to be a patriotic, honorable, law-abiding man. At the time he applied for naturalization he had been appointed by the board of health to aid in the eradication of bubonic plague in New Orleans and was ineligible unless a citizen. I considered, as I did with regard to the others, that the public interest, as well as his own, required his immediate naturalization.

The government relies, however, on the concluding clause of the act in question, to wit:

"* * * But such applicant for naturalization shall comply in all other respects with the law relative to the issuance of final papers of naturalization to aliens."

This clause but shows Congress must have considered that without it an applicant coming within the terms of the act would be subject to none of the provisions of the general law. It, of course, applies to anything required to be done by the applicant, such as renouncing allegiance, swearing to defend the Constitution, proving good character, etc. The posting of the application, however, is the duty of the clerk, not of the applicant, and the provision for hearing on stated days, after 90 days' posting, as required by section 6 of the original act, is addressed only to the court. In my opinion these provisions are directory, and not mandatory, at least when applied to persons applying under special acts, and may be disregarded in the sound discretion of, the court. It is not to be presumed the court will knowingly admit to citizenship an unworthy person. If it does so, the United States has the remedy sought to be pursued in this case.

[2, 3] But conceding, for the sake of argument, that I am wrong in these views, there is another aspect of the case equally fatal to the government's right of action. By virtue of section 15 of the act of 1906 the United States may sue to cancel a certificate of naturalization on the ground of fraud or illegality. It is conceded there was no

fraud in this case, and the only illegality complained of, is the failure to post the application for 90 days. The posting of the application is clearly a part of the procedure, and at most an irregularity. Irregularity is not synonymous with illegality. Illegality denotes a radical defect, while irregularity is a want of adherence to some prescribed rule or mode of proceeding. See Words and Phrases, vol. 4, p. 3389, verbo Illegality. The statute gives no right of action to cancel a certificate of naturalization for irregularity, and aside from that fact the proceeding is in the nature of a bill of review, and will not lie because of mere irregularity in procedure. U. S. Bank v. White, 8 Pet. 262, 8 L. Ed. 938. Furthermore, the bill will not lie unless the party is aggrieved by the decree, and it makes no difference that he might have insisted on the error at the original hearing or on appeal. Whiting v. U. S. Bank, 13 Pet. 6, 10 L. Ed. 33; Burley v. Flint, 105 U. S. 247, 26 L. Ed. 986.

There is not the slightest doubt that, if the government should prevail in this proceeding, the defendant could immediately file a new petition and be naturalized at the end of 90 days. The only possible damage the government could claim to have suffered would be the violation of its public policy. This apparently was the main ground on which the decision in the Peterson Case, supra, rested; but that ground is no longer tenable, for Congress, in passing the Naval Appropriation Act of June 30, 1914 (38 Stat. 395, c. 130), perhaps to overcome the effect of that decision, has provided for the immediate naturalization of honorably discharged members of the Navy, Marine Corps, and Revenue Cutter Service. It is well known that until quite recently sailors of the United States were popularly and officially considered to be citizens by the mere fact of their enlistment and service, and, but for a decision of the Comptroller denying them increased pay on re-enlistment unless regularly naturalized, it is doubtful that any special naturalization legislation would have been adopted in their favor. There is no difference as to desirability between sailors and civilians of the same class as the defendant and a public policy that would admit one to immediate naturalization may well be invoked in behalf of the other.

On the whole, the bill is without equity, and will be dismissed.