**KAY–R ELECTRIC CORPORATION,
Plaintiff–Appellant,**

v.

**STONE & WEBSTER CONSTRUCTION
CO., INC., and the Federal Insurance
Company, Defendants–Appellees.**

No. 1031, Docket 93–6225.

United States Court of Appeals,
Second Circuit.

Argued Feb. 2, 1994.

Decided May 2, 1994.

John A. DeFrancisco, Syracuse, NY (John J. Brunetti, of counsel), for plaintiff-appellant.

Susan T. Johns, East Syracuse, NY (Richard D. Grossman, Grossman, Kinney, Dwyer, Reitz & Harrigan, of counsel), for defendants-appellees.

Before: OAKES, KEARSE and CARDAMONE, Circuit Judges.

OAKES, Senior Circuit Judge:

Kay–R Electric Corporation ("Kay–R"), an electrical subcontractor, brought this suit under the Miller Act, 40 U.S.C. §§ 270a–270d (1988), against Stone & Webster Construction Co. ("Stone & Webster"), a general contractor that had contracted with the United States to furnish the materials and perform the labor for the construction of three buildings at Stewart Air Force Base in Orange County, New York.[1] The value of Kay–R's subcontract was $1,218,200. It called for the work to commence on August 3, 1987, and to be completed by July 4, 1988. The suit alleges that as a result of Stone & Webster's failures to excavate, pour footings, construct foundations and slabs for or erect structural steel for the buildings, enclose the buildings, and complete the interior of the buildings in a timely manner, the buildings were not finally enclosed until approximately 11 months after the date on which they were scheduled to be enclosed. The suit further alleges that these delays caused Kay–R to perform work in a piecemeal fashion, on an accelerated work schedule, through the inefficient use of its work force, and in exposed winter conditions. Kay–R claims to have experienced substantial additional costs for labor, materials, and the storage of materials to the reasonable value of $855,442. The United States District Court for the Northern District of New York, Howard Munson, *Judge,* granted summary judgment to Stone & Webster and the Federal Insurance Company on

the following basis: As part of each requisition for payment, Kay–R released Stone & Webster, its agents, heirs, successors or assigns, "from any claim or claims of whatever nature for materials furnished, labor performed, or expense incurred to date which is not included in the above amounts or noted in the space above as provided therefor...." Moreover, on none of the requisitions was any claim made as a result of or on account of delays. Rather, each requisition showed the material furnished and labor performed in accordance with the contract, deducted the previous payments, and showed the amount due.

We now affirm.

It is elemental that we consider motions for summary judgment *de novo. Owens v. New York City Hous. Auth.,* 934 F.2d 405, 408 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991). "As a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 2556 n. 2, 91 L.Ed.2d 265 (1986)).

Correctly, Kay–R states that the requisition forms that were used were not called for by the contract itself. Indeed, Kay–R first used its own form which contained no language pertaining to the release. On July 29, 1987, on Stone & Webster's letterhead, an assistant project accountant wrote Kay–R, requesting Kay–R to "submit the attached requisition for payment along with your invoice when billing against the above contract," attaching the Stone & Webster requisition forms which did contain the release language.

Apparently, Kay–R did not consult counsel and dutifully submitted the requisitions on the Stone & Webster forms. This is true even though by letter of February 10, 1988,

---

1. Kay–R also named Stone & Webster's bonding company, the Federal Insurance Company, as a defendant.

Kay–R had informed the Stone & Webster project manager that Kay–R was presently behind four months in supply and two months in maintenance, and that if it were the project manager's intention to maintain the completion schedule, radical work had to be done immediately, pointing out also that "we do not have enough nor have we had sufficient work for the men we have on site," and that "today we are performing work in the Supply Building which is contrary to normal practice, but we have nowhere to go." The letter mentioned nothing about additional expense being incurred. The affidavit of Kay–R's president, Robert L. Serafini, states that he and Stone & Webster's vice president, Ronald Wagner, during the course of the project had a number of meetings in which Wagner always acknowledged the responsibility of Stone & Webster to provide for additional costs, specifically, additional labor that was required to be furnished.

On March 11, 1989, after all of the work was performed, Serafini met with Stone & Webster representatives and lawyers in Boston. At that point, there had been no payments on the February 7, 1989, payment requisition form for $13,147, or on the March 23, 1989, requisition for $1,999.71. Nor were these requisitions subsequently paid, no doubt because Serafini made clear that he was making a claim on behalf of Kay–R.

On appeal, Kay–R makes five claims: (1) the district court misapplied the applicable summary judgment rules because respondent's moving papers were deficient as a matter of law; (2) there was no release of Kay–R's claims; (3) there was ambiguity in the scope of the release, or, alternatively, Stone & Webster failed to make a sufficient showing of a lack of ambiguity; (4) the exception dispensing with consideration as a prerequisite to an enforceable release as set forth in New York General Obligations Law § 15–303, was inapplicable because "the written instrument" in question purported to be a "requisition for payment on contract and because payment was a condition subsequent that was never fulfilled"; and that (5) under the doctrine of collateral estoppel the trial court should have followed the decision of another district judge in a similar case

brought by another subcontractor against Stone & Webster. We discuss each of these points in turn.

■ The first point, that the moving papers were deficient as a matter of law, is based on the proposition that the only fact alleged in Stone & Webster's moving papers is that documents entitled "requisition for payment on contract" were received by Stone & Webster. Beyond that, according to Kay–R, there was nothing other than an after the fact understanding of the Stone & Webster affiant at the time he signed the summary judgment affidavit which reads: "Based upon the above, it *is* my understanding, and I am so informed by counsel, that Kay–R has released Stone & Webster...." (emphasis added). Thus, Kay–R argues, (1) there was no evidence whatsoever that any official of Stone & Webster believed or had an understanding that Kay–R had released Stone & Webster from the type of delay damage claims that Kay–R was pursuing in the litigation and (2) there was also no evidence whatsoever as to the reason for the blank lines on the form.

The short answer to Kay–R's first point is that we are not concerned with what was going through the heads of the parties at the time these requisitions were signed by Kay–R's president and paid by Stone & Webster. Rather, we are talking about objective principles of contract law. In the words of Restatement (Second) of Contracts § 21 (1982), "Neither real nor apparent intention that a promise be legally binding is essential to the formation of a contract...." Rather, it is the "manifestation of mutual assent" that is important. *Id.* §§ 22, 23. It was not until December 27, 1990, months after the last requisition form was submitted, that Kay–R informed Stone & Webster of the expenses it claimed to have incurred from the delay— lost hours due to tardy concrete pours, bad weather, delay and disruptions caused by the masonry contractor; hours spent in handling and storage of materials (mostly fixtures that could not be installed as a result of delays); and hours required because of illogical installation of drywall and late work by a mechanical subcontractor. Yet none of these misspent hours were listed in the blank lines on

the requisition/release forms appearing after the phrasing, "Above does not include material furnished, labor performed, or expense incurred for which written authorization has not been given, as follows" and appearing immediately above the language of certification that the requisition form is a true statement of account and a release "from any claim or claims of whatever nature for materials furnished, labor performed, or expense incurred to date which is not included in the above amounts or noted in the space above as provided therefor." By so stating, Kay–R manifested (through its President's signature on the forms) assent to the release and by payment of the requisitions Stone & Webster made the assent mutual.[2]

■ Kay–R's second point is that claims for delay damages are outside the scope of any release. Kay–R argues that its claims dealt with mismanagement by Stone & Webster resulting in damages from inefficient use of work force, acceleration, additional storage, and other damages all above and beyond the lump sum due in the contract. The argument is that claims such as those were not subject to or capable of "written authorization" prior to being incurred so that there was no place on the form to put them. In other words, Kay–R submits that inefficiencies, accelerations, and other types of damages Kay–R was seeking were not capable of written authorization in advance. We are unpersuaded by Kay–R's argument especially in light of its own behavior. Just as Kay–R had written "none," as it did on the invoice of June 25, 1988, for example, Kay–R should have written in the additional expenses it is now claiming were expended as a result of delays, because those expenses consisted of labor performed or expense incurred for which an authorization had not been given. The release language itself covers any claims "of whatever nature for ... labor performed, or expense incurred to date which is not included in the above amounts or noted in the space above as provided therefor...." Kay–R lamely argues that § 2.1 of the contract proper and § 8.4 thereof constitute "written authorization" given by Stone &

Webster to incur all expenses for labor and material and other expenses that were required in order to fulfill the obligations under the contract, but surely in a contract with a fixed fee for the work required, if additional expense were being incurred for which the contractor Stone & Webster was responsible, it should have been claimed, not simply omitted at the time the requisitions were made.

■ Kay–R's third point is that there was ambiguity in the scope of the release or, in the alternative, Stone & Webster failed to make a sufficient showing of the lack of ambiguity. Of course, if there were any ambiguity, summary judgment should not be granted. *Seiden Assocs., Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir.1992); *see also Clifton Steel Corp. v. County of Monroe Pub. Works Dep't,* 136 A.D.2d 950, 951, 524 N.Y.S.2d 952, 953 (4th Dept.1988) (dismissing, in suit for delay damages, affirmative defense of release based on ambiguous language of release contained in a payment requisition form). Kay–R submits that the requisition form contains six uses of the term "above," having numerous possible meanings, together with a clause that contains a double negative with three blank lines and no dollar signs, together with an exception for "written authorization" without a definition therefor, so that it could not constitute a definite and precise, "explicit, unequivocal statement of a present promise to release a defendant from all liability." *Bank of America Nat'l Trust & Sav. Ass'n v. Gillaizeau,* 766 F.2d 709, 713 (2d Cir.1985) (internal quotation omitted). Taken as a whole, we find that the language in the payment requisition form constitutes a clear and unambiguous manifestation of an intent to release Stone & Webster from all expenses incurred as of the date of any particular requisition form, other than claims specifically listed on the form. The law of New York states that "[w]here ... the language with respect to the parties' intent is clear and unambiguous, it will be given effect, regardless of one party's claim that he intended something else." *Thailer v. LaRocca,* 174 A.D.2d 731, 733, 571 N.Y.S.2d 569, 571 (2d Dept.1991) (granting summary

---

**2.** Of course, this would not apply to claims as to hours spent owing to delays after the last requisi-

tion was paid, but we do not understand that there are any such hours.

judgment on the basis of an unambiguous release from liability for any claim arising from compliance with "request for employment verification"). Here, the plain language of the requisition form releases any and all claims not expressly reserved.

Kay–R's fourth point is that the exception dispensing with consideration as a prerequisite for an enforceable release, as set forth in New York General Obligations Law § 15–303, is inapplicable because the "written instrument" in question purported to be a "requisition for payment on contract," not a total or partial release, and because payment was a condition subsequent that was not fulfilled. Both of these arguments are disposed of through a close reading of Section 15–303. That section provides, in relevant part, that a "written instrument which purports to be a total or partial release . . . shall not be invalid because of the absence of consideration." N.Y.Gen.Oblig.Law § 15–303 (McKinney's 1989); *see also Pratt Plumbing and Heating, Inc. v. Mastropole*, 68 A.D.2d 973, 973, 414 N.Y.S.2d 783, 785 (3d Dept.1979) (untitled document running "To whom it may concern" could constitute release even though one party received no consideration in return for the release where "the release is embodied in a written instrument signed by the party renouncing the claim or discharging the obligation").[3] There is no requirement in § 15–303 that the instrument be entitled "Release." *Id.* at 973, 414 N.Y.S.2d at 785. Rather, it is sufficient that the instrument "purport" to be a release. We find that the language of the payment requisition form "purported" to be a release. Accordingly, Stone & Webster's failure to honor the ultimate and penultimate forms does not render the releases contained in those forms invalid.

Kay–R's final point is that Stone & Webster is collaterally estopped from claiming that its requisitions for payment constituted a release by virtue of the denial of a motion by Stone & Webster for summary judgment against Malcon Developers, Inc. in the Northern District of New York, before Judge McAvoy. But we of course do not know why summary judgment was denied in that case, and it is clear that for collateral estoppel to bar a party on an issue, the issue in dispute must actually have been litigated and actually decided. As the Restatement of Judgments (Second) § 13 (1982) points out, for purposes of issue preclusion, a final judgment may include "any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." The denial of a motion for summary judgment is not such. While *Lummus Co. v. Commonwealth Oil Ref. Co., Inc.*, 297 F.2d 80, 89 (2d Cir.1961), *cert. denied*, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962) has said that "finality" for purposes of collateral estoppel "may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again," the court mentioned as matters to be considered "such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review." There is of course no opportunity to review a denial of a motion for summary judgment. *Cf. Acha v. Beame*, 570 F.2d 57, 63 (2d Cir.1978) (certified partial summary judgment insufficiently final for res judicata purposes). As 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper *Federal Practice & Procedure* § 4432 at 299 (1981) puts it, "[a]ppeals would be wasteful, and preclusion would be folly, as to decisions that are merely tentative and contemplate further proceedings. In addition, the opportunity for appellate review has played an important role in insuring the quality of decisions offered as a basis for preclusion" (footnote omitted). *See also id.* § 4433 at 315–18.

Judgment affirmed.

---

3. We note that all except the last two requisitions were paid by Stone & Webster and, therefore, there was consideration for the releases from time to time throughout the period of the delays for which remuneration is now sought.