COLORADO COURT OF APPEALS
 2015 COA 160
 
 

Court of Appeals No. 14CA1350
Board of Assessment Appeals Nos. 63109 & 63110

Prospect 34, LLC and Prospect Development Company, Inc.,
Petitioners-Appellants,
v.
Gunnison County Board of County Commissioners,
Respondent-Appellee,
and
Board of Assessment Appeals,
Appellee,
and
Reserve Metropolitan District No. 2, a political subdivision of the State of Colorado,
Intervenor.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS
Division III
Opinion by JUDGE WEBB
Fox and Kapelke*, JJ., concur
Announced November 5, 2015

Seter & Vander Wall P.C., Kim J. Seter, Elizabeth A. Dauer, Greenwood Village, Colorado; Diamond McCarthy LLP, Michael J. Yoder, Dallas, Texas, for Petitioners-Appellants
David Baumgarten, County Attorney, Gunnison, Colorado, for Respondent-Appellee
Bailey & Peterson, P.C., James S. Bailey, Jr., Randall M. Livingston, Denver, Colorado, for Intervenors
*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2015.
 
¶1         Just what does “shall not exceed” mean in the mill levy provision of Reserve Metropolitan District No. 2’s (RMD2) service plan? According to Prospect Development Company, Inc., and Prospect 34, LLC (together, Prospect), this phrase means what it says — the maximum mill levy that RMD2 can assess on Prospect’s real property.[1] Not surprisingly, when RMD2 taxed Prospect at a higher rate, Prospect petitioned the Gunnison County Board of County Commissioners (BOCC) to abate the excess taxes. After the BOCC denied the petition, Prospect appealed to the Board of Assessment Appeals (BAA).
¶2         Instead of reaching the merits of this issue, the BAA resolved it against Prospect on the basis of the court’s order denying a summary judgment motion on this issue in a parallel district court action involving RMD2 and Prospect, among other parties. Because this order is not a final determination of the issue, we conclude that the BAA abused its discretion. Turning to the merits, we address a novel question of statutory interpretation and further conclude that under the Special District Act, the excess mill levy is illegal. For these reasons, we reverse and remand for the BAA to order the BOCC to grant the petition and abate the excess taxes.
I.         Background
¶3         RMD2 is a special district located entirely within the town of Mt. Crested Butte (Town) in Gunnison County. RMD2’s service plan — a document statutorily required to organize a special district — states that RMD2’s mill levy “shall not exceed 50 mills, subject to Gallagher Adjustments,” and that any levy beyond 50 mills requires Town approval. The Town adopted the service plan in 2000. The Gunnison County District Court organized RMD2 in 2001.
¶4         By 2013, the mill levy totaled 52.676 mills, including the Gallagher Adjustment of 2.676 mills. Then the RMD2 board approved certifying to the BOCC 55.676 mills, 3.000 mills in excess of the cap in the 2000 service plan. Although the maximum mill levy provision in the service plan had never been increased, the BOCC levied 55.676 mills on December 21, 2012.
¶5         The Town council protested the mill levy increase, noting that it “does not consent to any increase above 50 mills ‘gallagherized’ in the mill levy . . . .” Reserve Metropolitan District No. 1[2] (RMD1), the Town, and the Town council sued in Gunnison County Court to enjoin the excess mill levy and for a declaratory judgment that the excess mill levy was void. The court denied the council’s motion for summary judgment on this issue. That action remains pending.
¶6         The BAA did not independently examine the legality of the excess mill levy. Rather, the BAA order stated, in pertinent part:
Judge Patrick determined that the 3.000 mills were levied legally, notwithstanding the mill levy cap in the Service Plan. The Board declines to re-analyze Judge Patrick’s determination. As the tax has been determined to be legal, Petitioners are not entitled to an abatement/refund of taxes.
Then the order relied solely on the denial of summary judgment to conclude that “the 3.000 mills were levied legally.”
II. Preservation and Standard of Review
¶7         The parties do not dispute preservation of the issues on appeal. An appellate court may set aside a BAA order only if the BAA abused its discretion or if the order was arbitrary and capricious, based on clearly erroneous facts, unsupported by substantial evidence, or otherwise contrary to law. Boulder Cty. Bd. of Comm’rs v. HealthSouth Corp., 246 P.3d 948, 951 (Colo. 2011). But appellate review of statutory interpretation is de novo. Boulder Country Club v. Boulder Cty. Bd. of Comm’rs, 97 P.3d 119, 120 (Colo. App. 2003).[3]
III. Discussion
A. Does the BAA’s power to order taxes abated under section
39-10-114(1)(a)(I)(A) extend to Prospect’s assertion that the tax
exceeded the maximum mill levy allowed in the RMD2 service plan?
¶8         Prospect first contends the BOCC must abate the excess mill levy under section 39-10-114(1)(a)(I)(A), C.R.S. 2015. Prospect argues that the four specified grounds for abatement are not exclusive. Alternatively, it argues that the “irregularity in levying” ground encompasses illegal levies. RMD2 does not respond to Prospect’s proposed statutory interpretation, but instead asserts that Prospect introduced no evidence to show that the mill levy was illegal or erroneous.
¶9         Section 39-10-114(1)(a)(I)(A) provides, as relevant here:
[I]f taxes have been levied erroneously or illegally, whether due to erroneous valuation for assessment, irregularity in levying, clerical error, or overvaluation, the treasurer shall report the amount thereof to the board of county commissioners, which shall proceed to abate such taxes in the manner provided by law.
In HealthSouth, 246 P.3d at 951-53, the supreme court defined three of these grounds but declined to address “irregularity in levying.”
1. Statutory Construction
¶10         When construing a statute, the underlying goal is to “ascertain and effectuate the legislative intent, which is to be discerned . . . from the plain and ordinary meaning” of the text. People v. Frazier, 77 P.3d 838, 839 (Colo. App. 2003), aff’d, 90 P.3d 807 (Colo. 2004).
¶11         The first step looks to the “commonly accepted meanings” of the words. Bodelson v. City of Littleton, 36 P.3d 214, 216 (Colo. App. 2001). If the words are unambiguous, an appellate court gives effect to the words consistent with their commonly accepted meanings. See id. Otherwise, the court may consider “the statutory context, the consequences of a particular construction, and the legislative history.” Miller v. Indus. Claim Appeals Office, 985 P.2d 94, 96 (Colo. App. 1999).
2. Application
¶12         Recall, the BAA order did not accept or reject Prospect’s proposed interpretation of section 39-10-114. For the following two reasons, we construe the statute rather than remanding for the BAA to do so.
¶13         First, as noted above, this court reviews statutory interpretations de novo. Boulder Country Club, 97 P.3d at 120. Second, when a division of this court has set aside the ruling of a tribunal but a decision on remand would be reviewed de novo, the division may decide the remaining issue in the interest of judicial economy. See Kirkmeyer v. Dep’t of Local Affairs, 313 P.3d 562, 568 (Colo. App. 2011) (“Thus, judicial economy would not be served by leaving its interpretation to the Board on remand, subject to our de novo review in a later appeal, and we decline to do so.”).
a.  Section 39-10-114(1)(a)(I)(A)’s four grounds for abatement are not necessarily exclusive.
¶14         Prospect’s argument that the four bases for abatement within section 39-10-114(1)(a)(I)(A) are not the only possible grounds for abatement rests on the meaning of “whether.” The ordinary meaning of this word is “a function word followed [usually] by correlative or or by or whether to indicate . . . alternative conditions or possibilities. . . . [A] choice between alternatives.” Webster’s Third New International Dictionary 2603 (2002) (Webster’s 2002).
¶15         Even so, most courts have concluded that “the word ‘whether,’ when preceded by a general term, is not a word of limitation.” Uckun v. Minn. State Bd. of Med. Practice, 733 N.W.2d 778, 788 (Minn. Ct. App. 2007). As well, “[t]he cases hold without exception that words following ‘whether’ do not restrict the meaning to any following terms; rather, they enlarge upon it.” Galbreath v. Gulf Oil Corp., 294 F. Supp. 817, 824 (N.D. Ga. 1968), aff’d, 413 F.2d 941 (5th Cir. 1969); see also Cmty. Television of Utah, LLC v. Aereo, Inc., 997 F. Supp. 2d 1191, 1200 (D. Utah 2014) (“The term ‘whether’ does not imply that the ensuing clause encompasses a limitation.”).
¶16         These cases disfavor interpreting “whether” as an exclusory term. Nor does RMD2 explain why we should do so. But even if the four grounds for abatement listed in section 39-10-114(1)(a)(I)(A) are exclusive, Prospect’s alternative interpretation provides a sufficient statutory basis to challenge the excess mill levy.
b. “Irregularity in levying” encompasses an unlawful or illegal mill levy.
¶17         Colorado courts have not defined “irregularity in levying.” See HealthSouth, 246 P.3d at 951. The plain meaning of “irregularity” is “the quality or state of being irregular.” Webster’s 2002 at 1196. “Irregular” means “behaving without regard to established laws, customs, or moral principles.” Id.
¶18         Several courts have pointed out that “irregularity” is not interchangeable with “illegality.” See United States v. Richmond, 17 F.2d 28, 32 (3d Cir. 1927); United States v. Salomon, 231 F. 461, 464 (E.D. La. 1916), aff’d, 231 F. 928 (5th Cir. 1916); City of Tampa v. Palmer, 105 So. 115, 117 (Fla. 1925); Haen v. Haen, 314 N.W.2d 276, 277 (Neb. 1982); see also Patterson v. Commonwealth, 348 S.E.2d 285, 291 (Va. Ct. App. 1986) (“The fact that transactions were ‘irregular’ is not synonymous with their being illegal, or amounting to embezzlement.”).
¶19         And for purposes of injunctive relief, some tax cases distinguish between “irregularity” and “illegality”: “If the former, an action in injunction will not lie; if the latter, such action will lie upon payment or offer of payment of the just amount of taxes due.” Bunten v. Rock Springs Grazing Ass’n, 215 P. 244, 254 (Wyo. 1923); see also Goodyear Tire & Rubber Co., Inc. v. Tierney, 104 N.E.2d 222, 224-25 (Ill. 1952).
¶20         For all that, interpreting “irregularity in levying” to encompass illegal levies would not render “illegality” and “irregularity” synonymous. Rather, “irregularity” would include “illegality,” but illegality would not necessarily include irregularity. The dictionary definition of “irregular” — “not being or acting in accord with laws” — permits this construction.
¶21         A well-established statutory construction rule also supports Prospect’s alternative argument: “[A] court should not interpret the statute so as to render any part of it . . . meaningless . . . .” Soicher v. State Farm Mut. Auto. Ins. Co., 2015 COA 46, ¶46. The four grounds for abatement provide relief from taxes “levied erroneously or illegally.” § 39-10-114(1)(a)(I)(A) (emphasis added). The other three grounds for abatement do not encompass illegal actions.
¶22         Yet, if we do not interpret “irregularity in levying” to encompass illegal levies, we would read “or illegally” out of the statute. This we cannot do. See Soicher, ¶46. Thus, we conclude that “irregularity in levying” encompasses illegal levies.
B. Would the court of appeals be issuing an advisory
opinion or violating the separation of powers doctrine
by deciding the legality of the excess mill levy?
¶23         RMD2 contends we may not consider whether the excess mill levy was illegal because this question was not properly before the BAA, and our opinion on such an issue would be both a violation of the separation of powers doctrine and an advisory opinion. This argument partly relies on RMD2’s position that Prospect’s claims were not properly before the BAA because section 39-10-114(1)(a)(I)(A) does not provide relief from excess mill levies. We have already rejected this argument.
¶24         Otherwise, these contentions lack clarity. According to RMD2, addressing Prospect’s Title 32 arguments would violate the separation of powers doctrine because the judicial branch would be resolving questions arising from the BAA, part of the executive branch. But RMD2 also asserts a seemingly contrary position: the BAA lacked the “credentials” to resolve those same questions.
¶25         As to credentials, RMD2 argues that interpreting statutes such as Title 32 which “do not bear” on the four statutory bases for abatement falls outside the narrow statutory ambit the BAA is empowered to interpret. In support, RMD2 quotes only a seven-word snippet — requiring that an appeal from the BAA must “fall within the ambit of section 39-10-114” — from Property Tax Administrator v. Production Geophysical Services, Inc., 860 P.2d 514, 519 (Colo. 1993).
¶26         But this language is dictum because the court determined only that section 39-10-114 was not applicable to taxpayers in this situation, but they could protest their assessment based on another statute, section 39-5-118, C.R.S. 2015. 860 P.2d at 519 (“Although the taxpayers in these cases are challenging the amount of taxes assessed as being too high, i.e. based on an ‘overvaluation’ in the vernacular sense, it is not an overvaluation as that term is used in the statute . . . .”). And “powers not expressly granted to a state regulatory agency are implied if such are necessary to carry out the agency’s function and if the implied power is exercised in a reasonable manner . . . [which] includes the authority to interpret statutes pertinent to the dispute.” Denver Local 2-477, Oil, Chem. & Atomic Workers’ Int’l, Union v. Metro Wastewater Reclamation Dist., 7 P.3d 1042, 1046 (Colo. App. 1999). Applying this rule here, and given our interpretation of “irregularity in levying” in section 39-10-114, the BAA must be able to interpret other statutes concerning the legality of taxes. See Senior Corp. v. Bd. of Assessment Appeals, 702 P.2d 732, 736-37, 745 (Colo. 1985) (affirming a BAA interpretation of Title 32).
¶27         In light of the BAA’s power to interpret Title 32, accepting RMD2’s separation of powers argument would imperil judicial review of administrative agency decisions. Colorado’s Administrative Procedure Act specifically empowers the judicial branch to review executive action. See § 24-4-106(2), C.R.S. 2015 (“Final agency action under this or any other law shall be subject to judicial review . . . .”); § 24-4-106(9) (“The decision of the district court shall be subject to appellate review . . . .”). Parties may appeal a BAA decision to this court under section 39-10-114.5(2), C.R.S. 2015. Statutory interpretations are not excluded from these appeals.
¶28         RMD2’s advisory opinion argument fares no better. True enough, as RMD2 points out, Prospect raises “arguments that have been briefed before Judge Patrick and will be briefed again.” But RMD2 cites no authority precluding an appellate court under the advisory opinion doctrine from considering an issue because it is involved in a pending but entirely separate district court action. When an appellant “makes [an] argument in a conclusory manner, and it does not cite any authority supporting its position,” we may “decline to address it.” S. Colo. Orthopaedic Clinic Sports Med. & Arthritis Surgeons, P.C. v. Weinstein, 2014 COA 171, ¶35. And in any event, the excess mill levy question before us presents an actual controversy, not one based on hypothetical or uncertain facts. See Bickel v. City of Boulder, 885 P.2d 215, 234 (Colo. 1994) (defining “advisory opinion”).
¶29         Given all this, our review of the BAA’s order as to the legality of the excess mill levy neither violates the separation of powers doctrine nor constitutes an advisory opinion.
C. Did the BAA abuse its discretion by rejecting
the maximum mill levy argument based on the district court’s order
denying a motion for summary judgment on the same issue?
¶30         Prospect contends the BAA acted arbitrarily and capriciously and abused its discretion by relying on an order denying summary judgment as a final determination. RMD2 replies that the BAA’s decision not to “‘re-analyze’ a judicial officer’s order” was a correct recognition “of its own decision-making authority.” Because such an order is not a final determination of the issue raised in the motion, we conclude that the BAA abused its discretion.
1. Law
¶31         While an appellate court reviews the BAA’s decision for an abuse of discretion, the court reviews the “legal conclusions forming the basis for that decision de novo.” In re Marriage of Gallegos and Baca-Gallegos, 251 P.3d 1086, 1087 (Colo. App. 2010). “A court necessarily abuses its discretion if it misconstrues or misapplies the law.” L & R Expl. Venture v. CCG, LLC, 2015 COA 49, ¶16 n.5. 
¶32         “A denial of a motion for summary judgment is not a final determination on the merits . . . .” Feiger, Collison & Killmer v. Jones, 926 P.2d 1244, 1247 (Colo. 1996). Instead, such a determination “decides only one thing — that the case should go to trial.” Id. (quoting Switzerland Cheese Ass’n v. E. Horne’s Mkt., Inc., 385 U.S. 23, 25 (1966)). As explained by the Second Circuit:
As the Restatement of Judgments (Second) § 13 (1982) points out, for purposes of issue preclusion, a final judgment may include “any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.” The denial of a motion for summary judgment is not such.
Kay-R Elec. Corp. v. Stone & Webster Constr. Co., Inc., 23 F.3d 55, 59 (2d Cir. 1994).
¶33         RMD2 does not cite any authority to the contrary.
2. Application
¶34         The BAA relied on the district court’s summary judgment denial order as a legal determination: “Judge Patrick issued a preliminary ruling that the 3.000 mills levied . . . were a valid and legal exercise of RMD-2’s authority . . . . [T]herefore the 3.000 mills were levied legally.” But by giving binding effect to the district court’s order, the BAA misapplied the law and abused its discretion.
D. Are the excess mill levies illegal?
¶35         For the same two reasons that we interpreted section 39-10-114(1)(a)(I)(A), we take up the Special District Act instead of remanding this question to the BAA. The following three sections of the Act show that the excess mill levy was illegal.[4]
1.         Section 32-1-204(1.5)’s notice requirements
¶36Section 32-1-204(1.5), C.R.S. 2015, contemplates the existence of a “maximum mill levy.” The section sets out notice requirements for hearings on proposed taxes. Notification to taxpayers must include:
[t]he date, time, location, and purpose of such hearing, a reference to the type of special district, the maximum mill levy, if any, or stating that there is no maximum that may be imposed by the proposed special district . . . .
Id. (emphasis added).
¶37         If the General Assembly did not intend for mill levy caps to be enforceable, section 32-1-204(1.5)’s notice requirements are puzzling. Why would the statute mandate notice of the maximum mill levy, if the maximum mill levy was not binding?
2.         Section 32-1-202(2)(b)’s prohibition against “materially exceeding” the terms of the service plan
¶38         Before a special district can be organized, the board of county commissioners must receive and approve a special district service plan. § 32-1-202(1)(a), C.R.S. 2015; § 32-1-205(1), C.R.S. 2015. Contained within the service plan, a financial plan must explain
how the proposed services are to be financed, including the proposed operating revenue derived from property taxes for the first budget year of the district, which shall not be materially exceeded except as authorized . . . .
§ 32-1-202(2)(b) (emphasis added). This provision sets an upper limit on operating revenue derived from property taxes, subject to authorization to materially exceed this value. Again, if mill levy caps were unenforceable, the phrase “which shall not be materially exceeded except as authorized” in section 32-1-202(2)(b) would be meaningless. Yet, “[c]onstructions which render a part of the statute meaningless should be avoided.” People v. White, 819 P.2d 1096, 1097 (Colo. App. 1991).
3. Section 29-1-302’s procedure for increasing mill levies
¶39         The General Assembly delineated a procedure to increase mill levies beyond the service plan limit:
If the board of any special district . . . is of the opinion that the amount of tax limited by section 29-1-301 will be insufficient for the needs of such special district for the current year, the question of an increased levy may be submitted to the division of local government . . . , and it is the duty of said division to consider the public awareness of the question, the public support therefor, and the public objection thereto and to examine the needs of such special district and ascertain from such examination the financial condition thereof, and, if in the opinion of the division such special district is in need of additional funds, the said division may grant an increased levy for such special district above the limits specified . . . .
§ 29-1-302(1), C.R.S. 2015 (emphasis added). This provision further contemplates the enforceability of mill levy caps by requiring a specific procedure to exceed those limits. Exceeding the cap, therefore, is not otherwise permissible. The parties’ stipulated facts do not indicate that this procedure was followed.
4. Section 32-1-1101(1)(a) must be read in context with other
provisions regulating mill levies.
¶40         While RMD2 argues that section 32-1-1101(1)(a), C.R.S. 2015, appears to provide unlimited power to levy taxes, this provision must not be read in isolation. To be sure, it grants the board the authority to “levy and collect ad valorem taxes on and against all taxable property within the special district, which shall not be limited except as provided in section 39-10-111(11) . . . .” Id. But RMD2’s interpretation of section 32-1-1101(1)(a) as granting authority divorced from any limitations in the service plan would conflict with the statutory provisions discussed above.
¶41         When construing statutes, we “should attempt to harmonize any potentially conflicting provisions.” In re Regan, 151 P.3d 1281, 1290-91 (Colo. 2007). The broad power to levy and collect taxes can be harmonized with the other statutory provisions capping this power by reading all relevant provisions of the Special District Act together. See Travelers Indem. Co. v. Barnes, 191 Colo. 278, 283, 552 P.2d 300, 303 (1976) (“The [Colorado Auto Accident Reparations] Act must be viewed in the light of what is the obvious statutory scheme. It is fundamental that to do this, the whole of the Act must be read and construed in context.”).
¶42         Thus, “[t]o levy and collect ad valorem taxes” can be read as describing the board’s power to tax up to the limits described elsewhere in the Special District Act and the special district’s service plan.[5] As so interpreted, this provision does not undercut the other statutory provisions discussed above that support the enforceability of mill levy caps.
IV. Conclusion
¶43         We conclude: section 39-10-114(1)(a)(I)(A) provides a statutory basis for Prospect to challenge the excess mill levy before the BAA, the BAA had authority to decide whether the excess mill levy was illegal, the BAA abused its discretion by instead relying on an order denying summary judgment as making a final determination, and the excess mill levy was illegal.
¶44         Therefore, we reverse the BAA’s decision and remand for the BAA to order the BOCC to grant the petition and abate the excess taxes.
JUDGE FOX and JUDGE KAPELKE concur.

[1] The ordinary meaning of “maximum” is the “greatest in quantity or highest in degree attainable or attained.” Webster’s Third New International Dictionary 1396 (2002) (Webster’s 2002).
[2] The record before the BAA does not identify RMD1, but according to the RMD2’s filings to the BAA, RMD2 “was formed by the developer contemporaneously with Reserve Metropolitan District No. 1 . . . in a master-slave relationship through which RMD1 asserted dominion over RMD2’s activities.”
[3] A more deferential standard often applies when an administrative agency interprets its own regulations or statutes. Aberdeen Investors, Inc. v. Adams Cty. Bd. of Cty. Comm’rs, 240 P.3d 398, 400 (Colo. App. 2009) (“A reviewing court must give appropriate deference to the BAA’s interpretation of property tax statutes unless those interpretations are clearly erroneous.”). But here the BAA did not do so.
[4] Special districts must conform to their service plans only to the extent practicable. See Plains Metro. Dist. v. Ken-Caryl Ranch Metro. Dist., 250 P.3d 697, 700 (Colo. App. 2010). Therefore, a factual dispute over whether the service plan for RMD2 was practicable could hamper our interpretation of the Special District Act. But because RMD2 does not argue on appeal that the service plan was impracticable — and the record does not show that RMD2 argued this point before the BAA — we need not remand to the BAA for this factual determination. See Williams v. Teck, 113 P.3d 1255, 1260 (Colo. App. 2005) (declining to address arguments that were not raised in the agency action).
[5] We leave for another day the question whether a board’s power might include exceeding the maximum, if the board concludes that adherence to the current maximum is impracticable.